**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TIMOTHY RONALD BROWN,

      Petitioner,                      Civil No. 2:11-CV-11277

                                     HONORABLE GERALD E. ROSEN

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS PAROLE BOARD,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Timothy Ronald Brown, ("Petitioner"), currently residing in Saginaw, Michigan, after being discharged from his sentence by the Michigan Department of Corrections, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he challenges his guilty plea convictions of using the Internet to communicate with another person for the purpose of committing child sexually abusive activity, in which the intended victim is believed to be a minor, M.C.L.A. 750.145d(2)(f), and using the Internet for the purpose of disseminating sexually explicit material to a minor, in which the intended victim is believed to be a minor, M.C.L.A. 750.145d(2)(c).[1] Petitioner was sentenced to concurrent sentences

---

[1] The Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of, See *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821, n. 3 (E.D.Mich.2004), indicates that petitioner was discharged from his sentence on July 27, 2012. The language of §§ 2241(c)(3) and 2254(a) require that a habeas petitioner be "in custody" under the conviction or sentence under attack at the time that a habeas petition is filed in the federal court. *See Maleng v. Cook,* 490 U.S. 488, 490–91 (1989). Whether a petitioner is in custody for purposes of the habeas corpus statute is determined at the time that the petition is filed. *Sevier v. Turner*, 742 F.2d 262, 268 (6th Cir.1984). Because petitioner was in prison at the time he filed his petition, he satisfies the "in

1

of 24 months to 20 years' imprisonment and 24 months to 4 years' imprisonment pursuant to a *Cobbs* agreement. [2]   For the reasons stated below, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted of the above offenses following a guilty plea in the Oakland County Circuit Court.   This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).   *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was charged with child sexually abusive activity, MCL 750.145c(2) (count I), using the internet to violate MCL 750.145c(2), MCL 750.145d(2)(f) (count II), and two counts of using the internet to violate MCL 722.675, MCL 750.145d(2)(c) (counts III and IV).   Pursuant to a plea agreement, he pleaded guilty to counts II and III, and the remaining counts were dismissed.   In addition, the trial court agreed to impose a sentence at "the bottom of the guidelines."
> *************************************************************************************
> [D]efendant admitted to communicating over the internet with a person he believed to be a 15-year-old girl.   He transmitted photographs of his genitals, engaged in discussions of a sexual nature, and arranged to meet her for sex.
>
> *People v. Brown,* No. 283433, at 1-2 (Mich.Ct.App. September 1, 2009).

In addition to these facts, this Court recounts the following facts as gleaned from the

---

custody" requirement, in spite of his subsequent discharge. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

[2] *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. See M.C.R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. Appx 701, 703 n.1 (6th Cir. 2007).  Pursuant to the *Cobbs* agreement, Counts (1) and (4) child sexual abusive activity and using the Internet to communicate with a 15-year-old undercover persons for the purpose of violating M.C.L.A. 722.675 (i.e., disseminating sexually explicit material to a minor) when he believed the intended victim to be a minor, (MCLA 750.145(c)(2) and M.C.L.A. 750.145d(2)(c)), were dismissed.

record.   Petitioner sent the "girl" live webcam transmissions of himself masturbating. Petitioner explicitly told the 15-year-old what he wanted her to do to him sexually and what he would do to her sexually.   They arranged to meet the following afternoon, at a theater in Novi, in Oakland County, Michigan.  The following day, petitioner arrived at the theater as planned and was arrested. (Presentence Information Report, p. 2).  The February 26, 2007, chat log for "thumbguy," petitioner's user name, details petitioner's sexual plan pertaining to what he will do to the alleged 15 year old and what he would like her to do to him.  Petitioner periodically expresses concern that he may be conversing with a police officer, knowing that such behavior is illegal:

> hope u aint a cop (line 92)
> its kinda really illegal tho (line 421)
> I hope u r realy (sic) who u say u r (line 469)
> I don't want jailtime (line 470)
> you are forbidden pussy (line 472)
> will a bunch of hairy knuckled cops drag me to the court? (line 729-730)
> hi orificer (line 818)
> are you really 15?...not a cop or guy or reporter??? (line 1168)

Petitioner also mentions an encounter with another minor at the library two days before:

> I was at the library 2 days ago (line 1116)
> a YOUNG girl was sittin across from me (line 1118)
> she was waiting for her dad (line 1144)
> I was hard (line1145)
> but she didnt (sic) see it (ll46)
> I don't think she knew about hard ons (line 1147)
> I kept staring at her crotch as she opened it up to me (lines 1149-1150)
> and her ass/tits (line1151)
> she enjoyed me watching (line 1152)
> she had nice titties (line 1154)
> maybe 12 (line 1155)
> todays (sic) youth are developing early (line1157).

As mentioned above, petitioner pleaded guilty and was sentenced pursuant to a *Cobbs* agreement.

3

Petitioner, through his first appellate counsel, filed a motion to withdraw petitioner's guilty plea, for resentencing, and for an evidentiary hearing, which was denied by the trial court on January 9, 2008. Petitioner then filed a delayed application for leave to appeal, which was denied. *People v. Brown*, No. 283433 (Mich.Ct.App. April 14, 2008); *reconsideration den.* No. 283433 (Mich.Ct.App. May 29, 2008).

In lieu of granting leave to appeal, the Michigan Supreme Court remanded the case to the Michigan Court of Appeals to consider it as on leave granted. *People v. Brown*, 482 Mich. 987, 756 N.W.2d 62 (2008).

The Michigan Court of Appeals remanded the case to the trial court, ordering it to determine if petitioner was indigent. *People v. Brown*, No. 283433 (Mich.Ct.App. September 30, 2008). If so, the circuit court was directed to appoint counsel. *Id.* The lower court appointed a second appellate attorney on November 18, 2008.

Petitioner's appellate counsel subsequently filed a brief on appeal. Petitioner also filed a supplemental *pro per* Standard 4 brief. The Michigan Court of Appeals affirmed petitioner's convictions, but remanded for resentencing in accordance with his plea, and, if not, to allow him to withdraw his plea. *People v. Brown*, No. 283433 (Mich.Ct.App. September 1, 2009).

While petitioner's application for leave to appeal in the Michigan Supreme Court was pending, the circuit court resentenced him to concurrent terms of 2 to 20 years' imprisonment and 2 to 4 years' imprisonment. During his resentencing, petitioner requested to withdraw his plea on the ground that the court lacked jurisdiction and because he was factually and legally innocent. Based on the Michigan Court of Appeals' remand order, the circuit court denied petitioner's request. (Tr. 9/30/09, 4-7).

4

On November 5, 2009, the state circuit court appointed petitioner's third appellate attorney, Susan K. Walsh.

On November 23, 2009, the Michigan Supreme Court denied petitioner's application for leave to appeal. *People v. Brown*, 485 Mich. 980, 774 N.W.2d 861 (2009); *reconsideration den.* 485 Mich. 1073, 777 N.W.2d 171 (2010).

Petitioner's third court-appointed attorney met with him and informed him there were no appealable issues related to his resentencing. [3]  Appellate counsel asked petitioner to dismiss his appeal, but he refused and submitted a *pro per* delayed application with the Michigan Court of Appeals from his resentencing, in which he raised issues that dealt both with his resentencing and his underlying conviction.  Before the Michigan Court of Appeals ruled, petitioner filed an application with the Michigan Supreme Court from his resentencing.  The Michigan Supreme Court's clerk advised petitioner of the requirements for filing a bypass application. (Letter from Corbin R. Davis signed by Deputy Clerk Inger Z. Meyer dated May 5, 2010).  Petitioner submitted a letter describing why bypass was appropriate.

On the same day that the Michigan Supreme Court denied Petitioner's bypass application, the Michigan Court of Appeals denied petitioner's motion for peremptory reversal and denied his delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Brown*, No. 297479 (Mich. Ct. App. June 28, 2010); *People v. Brown*, 486 Mich. 1049; 783 N.W.2d 324 (2010).

Petitioner filed another application for leave to appeal with the Michigan Supreme

---

[3]  Under Michigan law, an appeal from a remand for resentencing is limited to the issues arising during that resentencing. *People v Jones*, 394 Mich 434, 435-436, 231 N.W. 2d 649 (1975).

5

Court, re-raising the same issues he raised in the Court of Appeals. The Michigan Supreme Court again denied petitioner's application for leave to appeal. *People v. Brown*, 488 Mich. 857, 787 N.W.2d 126 (2010).

In the interim, petitioner sent a letter to the Oakland County Circuit Court, in which he claimed that neither the Michigan Court of Appeals nor the Supreme Court had addressed his issues. The Oakland County Circuit Court treated petitioner's letter as a motion for relief from judgment under Mich. Ct. Rule 6.500 and denied relief. *People v. Brown,* No. 2007-213521-FH (Oakland County Circuit Court, September 14, 2010).

Petitioner filed two complaints for a state court writ of habeas corpus in Lenawee County, Michigan, which were denied. *Brown v. Bell,* No. 10-3881-AH (Lapeer County Circuit Court, October 11, 2010); *Brown v. Bell,* No. 10-3881-AH (Lapeer County Circuit Court, November 17, 2010).

Petitioner then filed a state court habeas corpus petition in Saginaw County, Michigan, which was denied. *Brown v. Rapelje,* No. 11-11405-03-AH (Saginaw County Circuit Court, March 7, 2011).

Petitioner subsequently filed a motion to vacate or rescind the order requiring him to register as a sex offender, which was denied. *People v. Brown,* No. 2007-213521-FH (Oakland County Circuit Court, March 11, 2011); *reconsideration den.* (Oakland County Circuit Court, March 25, 2011).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I.      Information appears constitutionally invalid for prosecution by;
(1) Deliberately suppressing constitutionally required portions of statutory provisions; (2) Charging only a portion of a title in two Counts; (3) Failing to charge any valid crimes under Michigan Law, and; (4) Manifesting a vexatious incitement to

6

litigation in a vacuum of legislative, constitutional, statutory authorization. (5) Resulting in an Information that is constitutionally invalid for prosecution, invalid for legal restraint, does not confer subject-matter jurisdiction to convicting court, or court, apparently.

II.    The computer charges have no underlying convictions to any crimes to make them valid for prosecution/restraint.

III.   So-called evidences, chat log and hard-drive supposed "image" copy by Atty Generals - all proven to be tampered, had exculpatory sections redacted.

IV.    Charging documents falsify jurisdiction to Oakland County in Counts 2,3,4, divesting personal jurisdiction from court.

V.    Ineffective assistance of counsel at all levels.

VI.    Sentenced to wrong counts, then resentenced to wrong counts after specifically litigated against in appeals documents to appellate courts.

VII.   State appellate courts did not adjudicate in a constitutionally valid manner as it was not based on the merits of the claims/issues presented.

VIII.  Invalid guilty plea convictions unconstitutionally obtained.

IX.    Actual innocence.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III.   Discussion

**A. Claims # 1, # 4, and # 8.  Information appears constitutionally invalid and the charging documents falsify jurisdiction to Oakland County in Counts 2,3,4, divesting personal jurisdiction from court.**

Petitioner's first challenge is to the integrity of the information filed against him in the state court, claiming that the complaint is constitutionally unsound.  Petitioner argues that "radical defects in convicting court's jurisdiction exists because the information lacks notice of the charges and is constitutionally invalid for prosecution and restraint." Petitioner further contends that because the information was deficient, subject-matter jurisdiction was lacking precluding the charge from qualifying as the underlying charge to Count II.

The Michigan Court of Appeals rejected Petitioner's claim, holding:

His argument appears to be directed at the manner in which the charges were set forth in the information rather than on whether his conduct came within the ambit of the statues at issue.  Because defendant pleaded guilty to the offense, did not object to the information below, and had not indicated how any alleged defect in the information prejudiced him, any alleged error must be deemed harmless.

*People v. Brown*, Slip Op. at * 2.

Petitioner claims that there are defects in connection with the court's jurisdiction

9

because the information lacks notice of the charges alleged. (Habeas Brief in Support p. 5).

An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *See also U.S. v. Martin,* 526 F. 3d 926, 932 (6th Cir. 2008). Under Michigan law, a plea to the information waives any challenge to irregularities in the complaint. *See U.S. ex rel. Penachio v. Kropp*, 448 F.2d 110, 111 (6th Cir. 1971); *Rogers v. Kropp*, Warden, 387 F. 2d 374, 375 (6th Cir. 1968). Because petitioner pleaded guilty to the charges without ever challenging the deficiencies with the criminal complaint, petitioner is precluded from obtaining habeas relief on this issue.

Furthermore, a guilty plea waives any objection to the court having personal jurisdiction over a defendant. *United States v. Juvenile Male*, 939 F. 2d 321, 324 (6th Cir. 1991)(quoting *In Re David*, 390 F. Supp. 521, 523 (E.D. Ill. 1975)).

Petitioner's plea of guilty to the charges constituted a waiver of the issue of the trial court having personal jurisdiction over him. *See People v. Easton*, 184 Mich.App. 649, 658, 459 N.W. 2d 86 (1990). By pleading guilty to these charges, petitioner waived any objection to the Oakland County Circuit Court having jurisdiction over his case. Furthermore, petitioner arranged to meet with the alleged 15 year old at a theater in Oakland County. Petitioner appeared as scheduled and was then arrested at the theater. Irrespective of the location of the theater and petitioner's subsequent arrest, petitioner pled guilty to the crimes and provided the chat logs as a basis for the convictions. Petitioner's jurisdictional claims are without merit.

**B. Claim # 2. The computer convictions have no underlying charges to any**

**crimes to make them valid for prosecution/restraint.**

Petitioner next alleges that the charges that he pleaded guilty to required him to be convicted of an underlying crime.

Petitioner's claim is non-cognizable on habeas review because it pertains to an interpretation of state law and is therefore a state law claim. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Moreover, petitioner's claim lacks merit. The language of Michigan's statute does not require an underlying conviction to be proven. M.C.L.A. 750.145d(2)(d) and (f) read "[i]f the underlying crime is a felony punishable by a maximum term of imprisonment. . ." Those "underlying crime[s]" are listed in M.C.L.A. 750.145d(1)(a) through (c). Petitioner's charges, Counts II and III, were that he used the Internet "to communicate with any person for the purpose of . . . [c]ommitting, attempting to commit conduct proscribed under section . . . 145c . . . or . . . 722.675, in which the victim or intended victim is a minor or is believed by that person to be a minor." *Id.* M.C.L.A. 750.145c(2) is a felony punishable by up to 20 years' imprisonment, making M.C.L.A. 750.145d(2)(f) the appropriate charge for Count II. M.C.L.A. 722.675(5) is a felony punishable by not more than 2 years' imprisonment, making M.C.L.A. 750.145d(2)(c) the appropriate charge for Count III.

Because Petitioner's claim involves an interpretation of Michigan law, he has failed to state a claim cognizable for purposes of federal habeas relief. This Court would also note in passing that by pleading guilty to these offenses, petitioner has waived his right to challenge the sufficiency of the evidence to convict him of the charges. *See United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987). Petitioner is not entitled to habeas relief on his second claim.

11

**C.  Claim # 3. So-called evidences, chat log and hard-drive supposed "image" copy by Atty Generals - all proven to be tampered, had exculpatory sections redacted**.

Petitioner's next claims that his guilty plea should be set aside, on the ground that law enforcement tampered with the chat logs and redacted exculpatory material.

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *See also Giglio v. United States*, 405 U.S. 150, 154 (1972)(exculpatory evidence includes "evidence affecting" witness "credibility," where the witness' "reliability" is likely "determinative of guilt or innocence").   There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).

In *Brady*, the Supreme Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him ... helps *shape a trial* that bears heavily on the defendant." *Brady*, 373 U.S. at 87–88 (emphasis added).  Similarly, in *United States v. Agurs*, 427 U.S. 97, 103-04 (1976), the Supreme Court indicated that the rule that prohibits the use of perjured testimony, upon which the *Brady* rule was founded, is based on the idea that the use of perjured testimony represents "a corruption of the truth-seeking function of the *trial process*." (emphasis added).  Finally, in *United States v. Bagley*, 473 U.S. 667, 678 (1985), the Supreme Court ruled that "suppression of evidence amounts to a constitutional violation only if it deprives

12

the defendant of a *fair trial*." (emphasis added).

In *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court held that a guilty plea is not rendered involuntary by the prosecutor's failure to disclose exculpatory impeachment information prior to the entry of the plea. *See Id.* at 628–33. The Supreme Court noted that "impeachment information is special in relation to the fairness of a trial, not in respect of whether a plea is voluntary." *Ruiz*, 536 U.S. at 629 (emphasis original). The Supreme Court further observed that "it is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty." *Id.* at 630.

To the extent that this allegedly withheld evidence is viewed as impeachment evidence, petitioner would not be entitled to habeas relief because as mentioned above, the prosecution is not required to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. *Ruiz*, 536 U.S. at 633; *Post v. Bradshaw*, 621 F. 3d 406, 426 (6th Cir. 2010).

Moreover, even if the alleged redacted chat log sections could be characterized as substantive exculpatory evidence, petitioner would not be entitled to habeas relief. Although the Supreme Court did not consider in *Ruiz* whether their holding also applied to the nondisclosure of exculpatory substantive evidence prior to the entry of a guilty plea, the Supreme Court in *Ruiz* emphasized the *Brady* rule's connection to the truth-finding function of a trial as the rationale behind their decision, which suggested that the holding in *Ruiz* extends to exculpatory substantive evidence as well. Significantly, at some points in their opinion the Supreme Court did not differentiate between the two types of exculpatory evidence, noting that "due process considerations, the very same

13

considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the 'right'" to pre-plea disclosure. *Ruiz*, 536 U.S. at 631. At least one federal circuit court has suggested that *Ruiz* applies to substantive exculpatory information as well as to impeachment information. *See Friedman v. Rehal*, 618 F.3d 142, 154 and n. 5 (2nd Cir. 2010).

In light of the reasoning of *Ruiz*, the Supreme Court's repeated description of *Brady* as grounded in the right to a fair trial, as well as the fact that the Supreme Court has yet to require that exculpatory information be disclosed prior to the entry of a guilty plea, petitioner would not be entitled to habeas relief on this claim, even if the allegedly withheld evidence was viewed as substantive exculpatory evidence. *See Orman v. Cain*, 228 F. 3d 616, 620-21 (5th Cir. 2000); *See also Jones v. Bryant*, 27 Fed. Appx. 699, 701 (7th Cir. 2001). This is particularly so in light of the fact that petitioner pleaded guilty to the charges in open court. *Jones*, 27 Fed. Appx. at 701. Petitioner is not entitled to habeas relief on his *Brady* claim.

Moreover, by pleading guilty, petitioner waived all factual challenges he could have made to the evidence. *See United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982). Furthermore, petitioner's post-judgment allegation which denies solicitation and exposure to a 15 year old minor and now claims that his conversations involved a role play with a 24 year old mother is unsupported by the chat logs. Petitioner claims that the redacted sections pertain to this role play. Within the chat logs, petitioner is concerned about being arrested by the police. (Lines 92, 421, 469, 470, 472, 729-730, 818,1168). The logs also contain, in graphic detail, material wherein petitioner relates his attraction to a 12 year old

14

"YOUNG" girl waiting for a ride from her father and the perceived 12 year old's attraction to him. (Lines 1116, 1118, 1144-1157). The comments pertaining to the 12 year old would be irrelevant in a role play with a 24 year old mother and would more likely be perceived as offensive by such a listener. Petitioner's claim is non-cognizable on habeas review and is meritless.

### E.  Claim # 5.  Ineffective assistance of trial and appellate counsels.

Petitioner contends that he was deprived the effective assistance at trial and with all three appointed appellate counsels claiming that counsel was ineffective "based on grounds I, II, III, VI, VI, VIII..."  Petitioner also contends that "[t]rial counsel failed to read and understand the law," while "[a]ppellate counselors were a mixed bag, some tried, others were clueless."  (Habeas Brief in Support, p. 14).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

15

"*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005).

In his fifth claim, petitioner contends that trial counsel "manipulated [petitioner] to plead guilty." Petitioner further contends that he "was told if he did not plead guilty the court would be angered, due to the preponderance of the evidence against him, and going to trial could cause judge (sic) Sosnick to START sentence at 13 years." (Original Emphasis).

As an initial matter, respondent contends that petitioner's fifth claim is unexhausted because it was never presented to the state courts. A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer,* 481 U.S. 129, 131 (1987). A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher*, 200 F.Supp.2d 725, 744 (E.D.Mich.2002); 28 U.S.C. § 2254(b)(1)(A)(c). Because petitioner's fifth claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss it on exhaustion grounds. *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

The Supreme Court has noted that:

Acknowledging guilt and accepting responsibility by an early plea respond

16

to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore*, 131 S. Ct. 733, 741 (2011).

The Supreme Court further admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture,". Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland.* The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

17

*Premo*, 131 S. Ct. at 741-42 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo*, 131 S. Ct. at 743 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall*, 340 F. 3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo*, 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty or nolo contendere, is therefore insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F. 3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

18

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005). Petitioner was facing a maximum sentence of up to 20 years in prison on the first and second counts of using the internet to communicate with another person for the purpose of committing child sexually abusive activity, in which the intended victim is believed to be a minor, MCLA 750.145d(2)(f), and up to 4 years imprisonment for using the Internet for the purpose of disseminating sexually explicit material to a minor, in which the intended victim is believed to be a minor, MCLA 750.145d(2)(c).

Trial counsel was able to negotiate a plea agreement with the prosecutor that permitted petitioner to plead guilty to counts two and three, with dismissal of counts one and four in addition to a sentencing agreement that called for a minimum sentence at the bottom of the guideline range of 24 months. As a result of the plea agreement, petitioner served two years in prison and is currently dismissed from parole. The graphic nature of the chat logs would undermine petitioner's contention that a jury would have found him innocent of the alleged crimes. Furthermore, a bottom of the guideline sentence of 24 months would further support that petitioner would not have chosen to go to trial, where conviction on all four counts could have resulted in a substantially higher sentence. Petitioner has failed to show that trial counsel was ineffective or had coerced petitioner in accepting this plea. The record is also clear that petitioner was advised of his rights by the trial court and accepted the plea voluntarily. Petitioner testified that the plea was entered into voluntarily. He then benefitted from the plea negotiated by his trial counsel. In light of the 24 month minimum sentence negotiated by trial counsel and dismissal of two

charges, it is apparent that trial counsel read and understood the law and provided meaningful representation, contrary to petitioner's assertion to contrary. Trial counsel was not ineffective and this part of petitioner's claim is without merit.

Petitioner next alleges that "appellate counselors were a mixed bag, some tried, others were clueless." Petitioner also claims that the ineffectiveness is "[b]ased on Grounds I, II, III, IV, VI and VIII," and "invites this Court to judge whether he suffered constitutionally deficient counsel, and whether it prejudiced his defense." (Petitioner's Habeas Brief in Support, p. 14).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right, *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), as well as first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609-10 (2005).

The claims alleged by petitioner are conclusory and without record support, as such they are meritless. This Court has already determined that petitioner's first, second, third, fourth, and eighth claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010). Petitioner's sixth, seventh, and ninth claims are also without merit and will be discussed below.

In regard to petitioner's claim against his third appellate attorney, an appeal from a resentencing is limited to the issues in connection with the resentencing. Appellate counsel did not find issues for appeal pertaining to the resentencing. Therefore, appellate counsel was not ineffective for requesting that petitioner dismiss his appeal after advising petitioner that he did not have issues for an appeal in connection with his resentencing. Petitioner's ineffective assistance claims are without merit.

20

### E.  Claim # 6.  Invalid sentence.

Petitioner contends that the court imposed an invalid sentence when it resentenced him inadvertently on Count 1 and then corrected the sentence to reflect a resentencing on Count 2.  Respondent agrees that the state circuit court misspoke when stated it was re-sentencing petitioner on Count I. (T 9/30/09, 7).  Petitioner has been discharged from parole and the issue is now moot.  Petitioner's argument is also without merit, being that a circuit court's oral pronouncement are not binding.  In Michigan, courts speak through their judgments and orders in criminal matters, not their oral statements or written opinions. *People v. Stackpoole*, 144 Mich. App. 291, 298; 375 N.W. 2d 419 (1985), *See also People v. Vincent*, 455 Mich. 110, 123-125; 565 NW2d 629 (1997)(In Michigan, a court speaks through its written orders.).  Petitioner's sixth claim is not only moot but without merit, being that the court entered a correct order, regardless of what may have been said on the record.

### F.  Claim # 7.  Adjudication in accordance with AEDPA standards.

Petitioner's seventh claim challenges the adjudication of his claims in accordance with the AEDPA standards.  This claim is non-cognizable for failing to state a claim pertaining to a constitutional violation.

### G.  Claim # 9.  Actual Innocence .

Petitioner's final claim alleges that he is actually innocent of the crimes underlying his convictions.  In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceeding.  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id.*, *See also Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999).  Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer*, 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases).  Petitioner would therefore not be entitled to relief on his ninth claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of

22

a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.


<u>s/Gerald E. Rosen</u>
Chief Judge, United States District Court

Dated:  February 7, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 7, 2014, by electronic and/or ordinary mail.

<u>s/Julie Owens</u>
Case Manager, (313) 234-5135

23